Rutgers v. New Brunswick.

THE STATE, CHARLES J. RUTGERS, RELATOR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEW BRUNSWICK, RESPONDENTS.

1. District Courts are inferior courts, which the legislature is empowered to establish, alter or abolish, at its discretion, as the public good may require; and if, in legislative discretion, the court is abolished, the term of service of its officers will thereby be terminated.

2. By the act approved March 9th, 1877, (*Pamph L.* 1877, *p.* 234,) it was enacted that one district court should be established in every city in this state of fifteen thousand inhabitants. The city of New Brunswick then had a population of sixteen thousand six hundred and sixty. By a supplement to this act, approved March 14th, 1878, the second section of the original act was amended by substituting twenty thousand, in the place of fifteen thousand, as the minimum population entitling a city to a District Court. *Held*—That this supplement abolished the court in New Brunswick, and that it was not a special or local law. Whether it was a law regulating the internal affairs of cities, not decided.

3. Distinctions between general and special or local laws heretofore made, re-affirmed.

4. The distinction is to be observed between classifications which are merely illusory and those which are of such a nature, and founded on such qualities or characteristics, as make the objects to which the legislation applies a distinct class by itself.

5. In passing upon the constitutionality of legislative acts, the courts scrupulously regard the substance of the legislative provision, giving only a secondary consideration to the form in which it is expressed.

On application for a *mandamus,* commanding the respondent to make payment to the relator of salary, as a judge of the District Court of the city of New Brunswick.

This case was argued on a statement of facts agreed on, which will sufficiently appear by the opinion.

Argued at November Term, 1879, before Justices DEPUE, SCUDDER and KNAPP.

For the relator, *J. Henry Stone.*

*Contra, A. V. Schenck.*

The opinion of the court was delivered by

DEPUE, J.   By the second section of an act of the legislature, approved March 9th, 1877, entitled "An act constituting District Courts in certain cities in this state," it was enacted that one District Court should be established in every city of this state of fifteen thousand inhabitants, and that cities of one hundred thousand or over should be entitled to two District Courts.   *Pamph. L.* 1877, *p.* 234.

When this act was passed, the city of New Brunswick had a population of sixteen thousand six hundred and sixty inhabitants, and was, therefore, one of the cities of this state in which one District Court was established by the act.

The relator was commissioned as judge of the District Court of the city of New Brunswick, March 30th, 1877. The prescribed term of his office was five years from the date of his commission.

By a supplement to the above-mentioned act—which supplement was approved March 14th, and took effect March 30th, 1878 — the second section of the original act was amended, by substituting twenty thousand, in the place of fifteen thousand, in the designation of the minimum population entitling a city to a District Court; and the District Courts theretofore established in all cities having a population of less than twenty thousand inhabitants were abolished. *Pamph. L.* 1878, *p.* 94.   This supplement, if valid and efficacious, abolished the District Court in the city of New Brunswick, and in abolishing the court of which the relator was a judge, vacated his office.

The relator was paid his salary up to March 30th, 1878. He now applies for a *mandamus* to compel the common council of the city to issue a warrant for his salary from that date to the expiration of the next current quarter, ending June 30th, 1878.

District Courts are inferior courts, which the legislature, by Article VI., Section 1, of the constitution of 1844, is empowered to establish, alter or abolish, in its discretion, as the public good may require ; and if, in legislative discretion, the

court is abolished, the term of service of its officers will thereby be terminated. *City of Hoboken* v. *Gear,* 3 *Dutcher* 265; *Love* v. *Mayor of Jersey City,* 11 *Vroom* 456.

It is admitted that if the supplement of 1878 be regarded as a special or local act, within the meaning of Paragraph 9, Section 7, of Article IV. of the constitution as amended in 1875, public notice of the application therefor was legally given.

The sole point reserved for argument is whether the supplement in question belongs to that class of legislation which is interdicted by Paragraph 11, Section 7, Article IV., of the amended constitution, as being a special or local law regulating the internal affairs of towns or counties. Cities are embraced in the designation of towns in this constitutional provision. *Pell* v. *Newark,* 11 *Vroom* 550.

The contention of the defendants in support of the efficacy of this supplement to accomplish the legislative purpose is two-fold: First, that a statute establishing a court for the adjudication of disputes between private individuals is not a regulation of the internal affairs of a city, though the jurisdiction of such a court is limited within the territorial boundaries of the city; and, second, that the supplement in question does not come within the designation of a special or local law, though it happens to have effect only on the court which was established by the original act in the city of New Brunswick. We do not deem it necessary to consider the elaborate argument of the counsel on the first of these propositions; the case can be disposed of on the second.

In the strictest sense, special or local laws would comprise all such laws as are confined in their application to a limited number of localities or subjects, and a general law be one universal in its application. In this sense, acts of the legislature relating to a particular kind of private corporations, or to a particular class of municipalities, would fall within the prohibition of the constitutional interdiction, as being special or local, however general they might be in their application within the scope of the purpose of such legislation. But this

is not the signification given to their terms by this court in the case of *Van Riper* v. *Parsons*, 11 *Vroom* 1; *Id.* 123. When that case was first before this court, it was held that, within the sense of these prohibitory clauses, a general law, as contradistinguished from one special or local, is a law that embraces a class of subjects or places, and does not omit any subject or place naturally belonging to such class. The second time that case passed under judicial examination in this court, the holding was that a law framed in general terms, restricted to no locality, and operating equally upon all of a group of objects which, having regard to the purpose of the legislature, are distinguished by characteristics sufficiently marked and important to make them a class by themselves, is not a special or local law, but a general law, without regard to the consideration that, within this state, there happens to be but one individual of that class, or one place where it produces effects. The statute which the court in that case gave effect to, in fact, spent its force entirely in its application to Jersey City. The distinction to be observed is between classifications which are merely illusory and those which are of such a nature, and are founded on such qualities and characteristics, as make the objects to which the legislation applies a distinctive class by itself. Acts of the legislature of the first class are within the constitutional prohibition; those of the latter are not. And in passing upon the constitutionality of legislative acts, the courts scrupulously regard the substance of the legislative provision, giving only a secondary consideration to the form in which it is expressed.

The original act establishing District Courts, is an act both local and special, in the strict sense of those words. It did not establish such courts in all the political divisions of the state, nor did it create them in all cities or towns in the state. The constitution of these courts, and the expenses incident to their maintenance, made their establishment, uniformly throughout the state, unwise and impolitic. Consequently, the legislature ordained their establishment only in certain of the cities of the state, and adopted, as a method of classifica-

tion, a minimum population of fifteen thousand. The legislature, for reasons satisfactory to itself, afterwards deemed it proper to modify the classification contained in the original act, by adopting a minimum population of twenty thousand, and, instead of repealing the first act, and proposing a new statute throughout, adopted the method of an amendatory act, by way of a supplement, to accomplish that end. A supplement is a mere modification of, or addition to the original act; both are to be read as parts of one law, and are to be considered as one law, in which the provisions of the later enactment, and the terms of the original act, so far as they have not been altered, contain the expression of the legislative will. *Hawthorn* v. *Hoboken*, 3 *Vroom* 172; *Stephens & Condit Tr. Co.* v. *Central R. R. Co.*, 4 *Vroom* 229; *State* v. *Bergen*, 5 *Vroom* 438.

The relator concedes that the classification contained in the original act was a proper classification. Indeed, he places his right to the remedy he seeks on the constitutionality of the original act. Without it, he has no standing in court. If a classification on the basis of a population of fifteen thousand was legally sufficient, no reason can be adduced for withholding the same effect from a classification on the basis of a population of twenty thousand. We cannot say that a classification founded on a discrimination in creating a class of cities in which the law shall apply, is substantial, and efficacious to make the law valid, in the one instance, and in the other is illusory and evasive.

Applying the rules of constitutional construction, heretofore adopted by this court, we think the act in question abolished the office of the relator, and that the rule to show cause should be discharged.